State ex rel. Compton v. Buder.

therefore, the record and proceedings of the said Board of Equalization should be quashed.

It is so ordered. All concur, except *Atwood, J.*, not sitting.

---

THE STATE, ex rel. WILLIAM R. COMPTON and ST. LOUIS JOINT STOCK LAND BANK v. WILLIAM BUDER et al., Constituting Board of Equalization of City of St. Louis.

In Banc, April 13, 1925.

1. **TAXATION: Strict Construction.** It is a well recognized rule that taxing statutes must be strictly construed.

2. ———: **Banks: Doing Banking Business: Assessment: Construction of Statute.** The statute (Sec. 12775, R. S. 1919), declaring that "persons owning shares of stock in a bank, or in joint stock institutions or associations doing a banking business," etc., does not authorize an assessment of taxes upon shares owned by shareholders of a bank or other institution which is merely authorized, by its charter or the law providing for its incorporation, to do a banking business; it authorizes an assessment against the shares only in the event the particular institution or corporation is a bank, or is doing a banking business. The words "bank" and "doing a banking business" as there used are identical in meaning, and they mean that unless the bank or other institution is doing a banking business state taxes cannot be assessed against the shares of its stockholders.

3. ———: ———: ———: **Federal Joint Stock Land Bank.** A Federal joint stock land bank "whose business is confined to making loans on improved farms for a term, which at no time has accepted or received deposits from the United States, or from its stockholders, or from any other person, and has at no time maintained any facilities for receiving deposits from any one or for cashing of checks drawn on deposits," is not a bank or doing a banking business, and an assessment of taxes cannot be made against the shares of stock of such institution. Under the statute (Sec. 12775, R. S. 1919) declaring that where persons own "shares of stock in banks, or in joint stock institutions or associations doing a banking business," such shares shall be listed, valued and assessed against the bank at their true value, less the value of the real estate, when

State ex rel. Compton v. Buder.

read in connection with the statutes (Sec. 11781, R. S. 1919; Laws 1913, p. 223, sec. 11780a) defining what is meant by a "banking business," state taxes cannot be assessed against "the shares of stock" of an institution which does not receive money on deposit, but receives it only in payment of stock and loans it out on real estate.

Citations to Headnotes:' Headnote 1: Statutes, 36 Cyc. p. 1189; Headnote 2: Taxation, 37 Cyc. p. 827; Headnote 3: Taxation, 37 Cyc. p. 827.

## *Certiorari.*

RECORD QUASHED. '

*Bryan, Williams & Cave* for relators.

(1) The St. Louis Joint Stock Land Bank, being (as decided by the Supreme Court of Missouri in Smith v. Kansas City Title Company, 255 U. S. 180) a fiscal agent of the United States Government, is not subject to any tax whatever unless by the consent and permission of the United States Government. The Federal Farm Loan Act (U. S. Compiled Statutes 1916, secs. 9835a-9835z), under which the St. Louis Joint Stock Land Bank is organized, does, however, expressly permit the State to pass an act taxing (a) the shares of said company, (b) the dividends paid on the shares of said company as income of the shares, or (c) the income of such company. No act has, however, been adopted in this State levying a tax on the shares of stock in such companies as such. (2) The St. Louis Joint Stock Land Bank is not a bank within the meaning of the provisions of Sec. 12775, R. S. 1919, and the attempted assessment against its shareholders under the provisions of said section, on the theory that it is a bank, is therefore void. Federal Farm Loan Act (U. S. Compiled Statutes, secs. 9835a-9835z) ; Senator Walsh on Joint Stock Lands Banks, 83 Cen. Law. Journal, 354; R. S. 1919, secs. 12775, 11780a, 11781; 1 Morse on Banks & Banking (5 Ed.) sec. 2; R. S. United States, sec. 3407; Selden v. Equitable

Tr. Co., 94 U. S. 419; Kiggins v. Munday, 19 Wash. 233; Ore. & Wash. T. & I. Co. v. Rathbun, 18 Fed. Cas. 10555; State v. Comptoir Natl. Bank, 51 La. Ann. 1272; Dunn v. State, 13 Ga. App. 314; Life Assn. v. Levy, 33 La. Ann. 1203; Wells Fargo Co. v. Northern Pac. Ry. Co., 23 Fed. 469; Scott v. Burnham, 56 Ill. App. 28; Hamilton Natl. Bank v. Trust Co., 66 Neb. 67. (3) While no act has been passed in this State levying a tax against the shares of such land bank companies, the dividends on such shares are made taxable as income of the owners of such shares under the provisions of Secs. 13106, 13107, R. S. 1919, as amended by Laws 1921, p. 187. And such dividends are in fact taxable under said sections. (4) If land bank companies formed under the Federal Farm Loan Act be held to be banks within the meaning of Section 12775 and their shares taxable as such under the provisions of said section, and the dividends on such shares are taxable under the provisions of said Sections 13106 and 13107, an attempt to tax both the shares and the dividends thereon results, and neither act is effective, because, while the Federal Farm Loan Act permits the taxation of joint stock land banks, such permission is upon the express condition that the imposition by any state of any one of the three permitted forms of taxation shall be in lieu of all other forms. Sec. 5219, R. S. United States.

*Oliver Senti* and *Daniel Bartlett* for respondents.

(1) Shares in joint stock land banks may be included in the valuation of the personal property of the owners of such shares for the purpose of taxation, and the assessment and taxation shall be in manner and subject to the limitations and conditions contained in Sec. 5219, Revised Statutes of United States with reference to the shares of national banking associations. Federal Farm Loan Act of July 17, 1916, ch. 245, sec. 26 (U. S. Compiled Statutes, sec. 9835g2). Section 26 of Farm Loan Act, being a reference statute, and the reference

to Section 5219 being specific, it does not embrace or include any subsequent modification of Section 5219, and hence the amendment of Section 5219 by Act of March 4, 1923, did not alter or affect in any way the right of the State to tax the shares of joint stock land banks. Lewis' Sutherland on Statutory Const. (2 Ed.) sec. 405; State v. Rogers, 253 Mo. 408; Gaston v. Lamkin, 115 Mo. 33; Postal Tel. & C. Co. v. So. Ry. Co., 89 Fed. 194; Kendall v. United States, 37 U. S. 524, 9 L. Ed. 1181; In re Heath, 144 U. S. 92, 36 L. Ed. 358. (2) And even if it be held that the State is put to its election as to which method of taxation of the shares in joint stock land banks the State will enforce, there is no showing that the State has enforced or is attempting to enforce any other method, or is attempting to levy any tax on the shares of St. Louis Joint Stock Land Bank other than that tax which relators, by the present proceedings, seek to avoid. (3) St. Louis Joint Stock Land Bank is organized and exists under the provisions of the Federal Farm Loan Act. Act of July 17, 1916, U. S. Compiled Statutes, sec. 9835. The State is authorized and empowered by Congress to assess and tax the shares in such banks. Federal Farm Loan Act, sec. 26. Thus, with sufficient authority from the act under which the bank was organized, shares therein may be assessed and taxed under the revenue laws of the State, and more particularly under Sec. 12775, R. S. 1919, which provides for the assessment of shares in "banks or joint stock associations doing a banking business." St. Louis Joint Stock Land Bank is a bank within the meaning of Section 12775. Century Dictionary and Cyclopaedia; Standard Dictionary; Encyclopaedia Britannica (11 Ed.); Federal Farm Loan Act of July 17, 1916; R. S. United States, sec. 5219; Smith v. Trust Co., 255 U. S. 180, 65 L. Ed. 577.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, *amicus curiae.*

(1) Shares of stock in banks, joint stock institutions or associations doing a banking business, are subject to

taxation at their true value in money, less the value of real estate, if any, represented by such shares of stock. Sec. 12775, R. S. 1919; State ex rel. v. Shryack, 179 Mo. 424; State v. Citizens Bank, 274 Mo. 60. (2) The State may tax all the shares of national banking associations located within its limits, or the dividends therefrom in the taxable income of the owner or holder thereof, or the income of the associations. The imposition of any one of the above three forms of taxation shall be in lieu of the others. Sec. 5219, U. S. Statutes, as amended, March 4, 1923, (42 U. S. Statutes at Large, p. 1499); Owensboro Natl. Bank v. Owensboro, 173 U. S. 669; First Natl. Bank v. Meredith, 44 Mo. 500; State ex rel. v. Citizens Bank, 274 Mo. 67. (3) Section 26 of the Federal Farm Loan Act specifically exempts from federal, state, municipal and local taxation, Federal land banks and every national farm loan association, but as to joint stock land banks, declares that: "Nothing herein shall prevent the shares in any joint stock land bank from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the bank is located; but such assessment and taxation shall be in manner and subject to the conditions and limitations contained in Section fifty-two hundred and nineteen of the Revised Statutes with reference to the shares of national banking associations." 39 U. S. Statutes at Large, 360. (4) Joint stock land banks have been held by the Supreme Court of the United States to be banks with limited power. Smith v. Kansas City Title Co., 255 U. S. 210.

DAVID E. BLAIR, J.—The St. Louis Joint Stock Land Bank, a corporation organized under the Federal Farm Loan Act and herein referred to as "land bank," and William R. Compton, owner of shares of stock of said land bank, seek our order quashing the record of the Board of Equalization of the City of St. Louis, herein referred to as "board."

In response to our writ theretofore issued, a return was filed incorporating a stipulated record of the proceedings before the board. Relators filed their motion for judgment upon the pleadings, thereby admitting all facts well pleaded in said return. The Attorney-General has filed a brief as *amicus curiae*.

As appears in the stipulated record, the board made an order on April 12, 1924, directing "that an assessment be made against the shares of stock of said St. Louis Joint Stock Land Bank for taxes for the year 1924 on the basis of a total assessment in the sum of $603,292.87." The board was dissolved on April 12, 1924, and prior to the issuance of our writ. The records and minutes of the board are in the custody and control of respondent William Buder, herein referred to as "assessor."

The sole question in the case is the power and authority of the board to assess against said land bank, for taxation for state, city and school purposes, the value of the shares of stock owned by the shareholders of said land bank. It is conceded that the land bank is a Federal agency and that its shares of stock are not subject to taxation by the State or its agencies, except to the extent and in the manner authorized by Congress.

In the view we take of the case, it is unnecessary to enter into an extended consideration of the various provisions of the Federal Farm Loan Act which give rise to the authority of the State to take advantage of the Federal Government's permission to tax the shares of said land bank. We will assume that such authority exists. Relators concede this, but contend that the State of Missouri has not enacted any law to take advantage of such permission. Respondent assessor contends that Section 12775, Revised Statutes 1919, which was enacted long before the Federal Farm Loan Act was passed, is broad enough in its scope and meaning to serve as such authority.

Much space is taken in the briefs and numerous decided cases and text-writers are cited upon the question

of whether or not the land bank is doing a banking business. It will be unnecessary to consider such authorities at length, because we think the issue here involved can be settled by a consideration and understanding of our statute.

It is conceded by respondent assessor that the only section of our statute authorizing the State or any agency thereof to tax the shares of the land bank is found in Section 12775, Revised Statutes 1919. If that section be deemed not to cover the situation, the record of the board should be quashed and other contentions in the case need not be noticed.

The portion of said section which is counted upon as authority for the assessment made by the board, reads as follows:

"Persons owning shares of stock in *banks,* or in joint stock institutions or associations *doing a banking business,* shall not be required to deliver to the assessor a list thereof, but the president or other chief officer of such corporation, institution or association shall, under oath, deliver to the assessor a list of all shares of stock held therein, and the face value thereof, the value of all real estate, if any, represented by such shares of stock, together with all reserved funds, undivided profits, premiums or earnings and all other values belonging to such corporation, company, institution or association; and such shares, reserved funds, undivided profits, premiums or earnings and all other values so listed to the assessor shall be valued and assessed as other property at their true value in money, less the value of real estate, if any, represented by such shares of stock." (Italics ours).

It is provided by Section 12777 that the taxes assessed against such shares of stock shall be paid by the corporation, and that such corporation may recover from the owners of such shares the amount so paid or may deduct such payments from dividends accruing thereon.

It is stipulated as a fact, "that the business of the St. Louis Joint Stock Land Bank has been confined to making loans on improved farm lands in the states of

Missouri and Arkansas for a term; that the St. Louis Joint Stock Land Bank at no time accepted or received any deposits from the United States Government, or from its stockholders, or any other persons, and had at no time maintained any facilities for the receiving of deposits from anyone, or the cashing of checks drawn on any such deposit.''

Citation of authority is entirely unnecessary in support of the well recognized rule that taxing statutes must be strictly construed. Our Section 12775 does not authorize the assessment of taxes upon the shares owned by shareholders of a bank or other institution which is *merely authorized,* by its charter or the law providing for its incorporation, to do a "banking business." It authorizes the assessment of such taxes only in the event the particular institution or corporation is a "bank," as generally understood, or is *"doing a banking business."* True, the words, "doing a banking business," in the order in which they appear, apparently modify only the words "joint stock institutions or associations;" but the connection in which such modifying words are used clearly denotes that they relate back to the word "bank," as well, and indicate the sense in which the word "bank" is used. That word is used in the sense of an institution which is doing a banking business, as generally understood or as defined by statute. The words "bank" and institutions "doing a banking business" are identical in meaning as used in Section 12775.

We have found only two sections of our statutes which attempt to define what is meant by "banking business" and they are not found in the chapter on taxation. Section 11781 defines private bankers as "those who carry on the business of banking by receiving money on deposit, with or without interest, by buying or selling bills of exchange, promissory notes, gold or silver coin, bullion, uncurrent money, bonds or stocks, or other securities, and of loaning money, without being incorporated."

It will be noted that such persons must be engaged in three lines of business activity, to-wit, accepting de-

posits, buying and selling various securities *and* loaning money. The land bank is actually engaged in a restricted way in the loaning of money, but admittedly not in the business of receiving deposits. It is not doing a banking business under the definition contained in said Section 11781.

· The other statutory definition is found in Laws of 1923, page 223, which enacted a new section known as Section 11780a, Revised Statutes 1919. We note the contention of the assessor that the 1923 act did not take effect until after the date of the assessment under consideration here, but will quote said section for what it is worth. It provides that "the term 'bank' shall include any person, firm, association or corporation soliciting, receiving or accepting money, or its equivalent, on deposit as a business, whether such deposit is made subject to check, or is evidenced by a certificate of deposit, a pass book, a note, a receipt or other writing." In the face of the stipulation in this case, it cannot be contended that the land bank is a "bank" or an institution "doing a banking business," as defined by new Section 11780a, because it has never accepted deposits of any character.

While Sections 11781 and 12775 were enacted upon different subjects, yet they relate to the same class of persons or things and are in *pari materia*. At least Section 11781, if not the Act of 1923, may be safely referred to as constituting the legislative idea of what is meant by "doing a banking business" in this State and the land bank is not doing a banking business, as therein defined.

Aside from our own statutory definition of what constitutes doing a "banking business," we do not think the business in which the land bank is engaged, under the stipulation filed, brings it within the definitions of that term cited by the assessor. He quotes the Century Dictionary And Cyclopedia as defining a bank as "an institution for lending and receiving money." The term "receiving money" evidently refers to receiving money on deposit and not to receiving money in payment of sub-

scriptions for stock or from the sale of bonds or repayment of loans. It refers to the *business* of receiving money on deposit. The land is, of course, engaged in a restricted way in the lending of money. If receiving money otherwise than upon deposit is meant as the test under said definition, then every individual. or corporation engaged in making real estate loans, collecting the principal and interest thereon and selling said notes and the mortgages or deeds of trust securing same, is engaged in the banking business under the definition for which the assessor contends.

The definition of a bank quoted from the Standard Dictionary as "an institution for lending, borrowing, issuing or caring for money" clearly would cover many persons and corporations engaged in lines of business no one would for a moment regard as coming within the term "doing a banking business" as used in our Section 12775. The words "lending," "borrowing," "issuing" and "caring for" are connected by the word "or," indicating that engagement in any one of such activities constitutes one a banker. The use of the conjunction "and" would more nearly approach the sense in which the term "doing a banking business" is apparently used in Section 12775.

Respondent quotes from Encyclopedia Britannica (11 Ed.) as follows: "The word 'bank' in the economic sense, covers various meanings which all express one object, a contribution of money for a common purpose. The term has been gradually applied to several classes of institutions established for the general purpose of dealing with money." The first sentence of this definition treats the words in the sense of "pool," as where a number of persons contribute money for a common purpose. A corporation organized to engage in the merchandising business would be a bank in that sense; yet, clearly that is not the sense in which the words "bank" or "doing a banking business" are used in Section 12775. The "general purpose of dealing in money," as used in the second sentence, is broad enough to include an in-

stitution doing a banking business, but is indefinite. The definition is broad enough to include the acceptance of deposits along with lending or otherwise generally dealing with money.

The quotation from Smith v. Kansas City Title & Trust Co., 255 U. S. 180, 210, 65 L. Ed. 577, 589, that, "Speaking generally, a bank is a moneyed institution, to facilitate the borrowing, lending and caring for money," includes the depositing of money, as well as the borrowing and lending of money.

The United States Supreme Court did not hold that the *use* of Federal land banks as depositaries was essential to the validity of the law. It merely held that it was sufficient if they were *subject to such use* by the government. Mr. Justice DAY said (65 L. Ed. 589): "But, it is urged, the attempt to create these Federal agencies, and to make these banks fiscal agents and public depositaries of the Government, is but a pretext. But nothing is better settled by the decisions of this court than that when Congress acts within the limits of its constitutional authority, it is not the province of the judicial branch of the Government to question its motives. [Citing cases.] That Congress has seen fit, in making these banks fiscal agencies and depositaries of public moneys, to grant to them banking powers of a limited character, in nowise detracts from the authority of Congress to use them for the governmental purposes named, if it sees fit to do so."

The quotation from said opinion, relied upon by respondent and first quoted by us, is followed by this expression: "But whether technically banks, or not, these organizations may serve the governmental purposes declared by Congress in their creation."

It is evident that the Supreme Court was not deciding whether the Federal land banks were or were not banks as generally understood, but whether the declared purpose of their organization met the constitutional test of a governmental purpose, even though they were not technically banks.

We may assume for the purpose of this case that the *powers* granted to land banks are sufficiently broad to constitute them banks or institutions doing a banking business, in a limited way, it is true, but nevertheless banks within approved definitions and our own Section 12775. But as our statute provides for taxes of shares of stock only in institutions which are actually banks or which are doing such banking business and as the land bank is not actually doing such banking business, it appears that the shares of stock therein are not taxable under Section 12775.

In this view of the case it becomes unnecessary to consider other questions raised by the briefs. The necessity for their consideration is wholly dependent upon the construction of Section 12775 as making sufficient provision for the assessment of such shares. Such shares are concededly exempt from state taxation, except in accordance with Section 26 of the Federal Farm Loan Act. As the land bank is not a bank or an institution doing a banking business within the meaning of our Section 12775, this State has made no sufficient provision for taxing the shares owned by stockholders in land banks and it makes no difference whether Section 5219 of the Federal statute, as referred to in Section 26 of the Federal Farm Loan Act, or said Section 5219, as amended March 4, 1923, fixes the method the State must adopt in order to avoid the exemption of such shares from taxation by the states.

It follows that the assessment made by the board was unauthorized and is void, and that its record making such assessment should be quashed. It is so ordered. All concur, except *Atwood, J.,* not sitting.